**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
TEXTRON FINANCIAL CORPORATION,

                    Plaintiff,

        - against -

EDDY'S TRAILER SALES INC.
and THOMAS J. GOULDSBURY,

                    Defendant.
---------------------------------------------------------X

**ORDER**

CV 08-2289 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      P RELIMINARY S TATEMENT

      Plaintiff Textron Financial Corporation ("Textron" or "Plaintiff") commenced this action

against Defendants Eddy's Trailer Sales, Inc. ("Eddy's") and its owner, Thomas J. Gouldsbury

("Gouldsbury") (together, "Defendants") to enjoin Eddy's from (1) selling Inventory (as that term

is defined in the Complaint) and other collateral in which Textron has a security interest and (2)

using the proceeds for Eddy's operations (referred to as selling units "out of trust").  Compl.,

¶¶ 7, 11, 22-40.  Plaintiff, a commercial finance company, alleges that as a result of Eddy's

failure to pay sums due under the parties' Wholesale Security Agreement (as amended) and

Finance Plan (*id.*, Exs. A, B, D), Defendants have breached such agreements, and both Eddy's

and Gouldsbury (as a personal guarantor under the parties' Guaranty (*id.*, Ex. C)), are jointly and

severally liable for the total amount due of $4,150,042.31, plus interest.  *Id.*, ¶¶ 41-49.

      Before the Court is Textron's motion [DE 68] to compel the further deposition testimony

of Gouldsbury over his assertions of the Fifth Amendment privilege against self-incrimination.

Defendants oppose [DE 69] the motion.  Having reviewed the parties' submissions, the transcript

of Gouldsbury's previous deposition and the applicable case law, and for the reasons set forth

below, I am granting, in part, and denying, in part, Textron's motion.

## II.    THE PARTIES' POSITIONS

During the deposition of Defendant Gouldsbury, counsel for Gouldsbury instructed him

not to answer several questions posed by Plaintiff's counsel on the basis of the Fifth Amendment

right against self-incrimination.  In the instant motion, Textron seeks to compel Gouldsbury's

responses to seven of those questions, which pertain to:  (1) whether Gouldsbury knew if his

employees had changed the VINs on vehicles in anticipation of a floor plan inspection by the

lender (Tr. at 74:2-5[1]); (2) whether employee Stacie Hoffman discussed with Gouldsbury a list of

units that had been sold but for which payment had not been made to the lender (Tr. at 79:10-11);

(3) whether Gouldsbury knew if Hoffman shared that list with anyone other than him (Tr. at

79:23-25); (4) whether Hoffman kept Gouldsbury apprised of the amounts owed to the lenders

(Tr. at 135:16-18); (5) whether Eddy's had ever produced certain financial records (Tr. at 137:17-

19); (6) whether Gouldsbury's son Shaun (who also worked at Eddy's) learned that Eddy's was

"out of trust"[2] at the third meeting with Eddy's accountant (Tr. at 147:6-8); and (7) the extent to

which Gouldsbury shared information with the accountant regarding Eddy's financial condition

(Tr. at 151:13-15).  *See* DE 68 at 2 and Ex. A.  During the deposition, in response to each of

---

[1]    Citations to "Tr.at  _:_" are to the page and line numbers of the transcript of the
deposition of Thomas J. Gouldsbury.  The parties submitted the complete transcript of the
deposition pursuant to the Court's request and the Court has reviewed the full transcript.

[2]    "Out of trust" refers to the selling of a unit of Inventory (which was purchased with
money provided by a lender) without repaying the lender as required.  Tr. at 57:22-24.

these questions, Gouldsbury's counsel instructed him not to answer based upon his Fifth Amendment rights. Gouldsbury followed that advice.

Textron moves to compel Gouldsbury's responses to those deposition inquires on the grounds that "the privilege was improperly invoked as to these questions based on the fact that these questions asked about the actions and knowledge of individuals other than Mr. Gouldsbury, and the privilege cannot be invoked to protect third parties." DE 68 at 2. Textron further contends "that to the extent that any privilege may have existed as to Mr. Gouldsbury himself with regard to how he carried out the fraud on [Textron], it was waived" as a result of statements Gouldsbury made during the deposition. *Id*. Gouldsbury has produced incriminating documents, Textron argues, and has "outright admitted to having sold [Textron]-financed inventory without paying Textron." *Id*. at 3. In addition, Textron claims that Gouldsbury's offer of judgment as to all of the allegations against him constitutes an admission that he perpetrated a fraud upon Textron.

Gouldsbury opposes the motion, arguing that (1) his invocations of his Fifth Amendment right were appropriate; (2) Textron's position that Gouldsbury can be compelled to testify against himself about conversations he had with others (whom Textron believes conspired with Gouldsbury to defraud Textron) is incorrect; (3) the allegedly incriminating documents referenced by Textron were not produced by Gouldsbury, but by another Eddy's employee; (4) "Gouldsbury's brief and somewhat rambling responses to Plaintiff's improperly formulated deposition questions regarding certain conversations between Mr. Gouldsbury and his son about certain rental units should not be construed as a testimonial waiver of [his] Fifth Amendment

privilege;" and (5) Gouldsbury's offer of judgment was for settlement purposes only and cannot be used against him in this context. *See* DE 69 at 1-2.

## III. DISCUSSION

### A. Applicable Law

The privilege against self-incrimination embodied in the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege can be invoked in *any* proceeding where the witness 'reasonably believes [that his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Andover Data Servs. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1082 (2d Cir. 1989) (emphasis in original) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972)). The Supreme Court has held that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Andover Data Servs.*, 876 F.2d at 1082 (citing *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983)).

The right not to answer potentially incriminating questions is not absolute. Rather, a witness may invoke the Fifth Amendment to decline to answer a deposition question only "when the individual has reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution." *Cartier v. Micha, Inc.*, 06 Civ. 4699, 2008 U.S. Dist. LEXIS 39143, at *5 (S.D.N.Y. May 12, 2008) (quoting *Osrecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 306 (S.D.N.Y. 2003)); *see also Hoffman v. United States*, 341 U.S. 478, 486 (1951) (the privilege may be invoked "whenever a witness reasonably believes that his testimony could furnish a link in the chain of evidence needed to prosecute him

for a crime").  The witness may not refuse to answer "merely because he declares that in so doing, he would incriminate himself -- his say-so does not of itself establish the hazard of incrimination."  *Hoffman*, 341 U.S. at 486.  "It is for the court to say whether his silence is justified . . . and to require him to answer if it clearly appears to the court that he is mistaken."  *Id*. (internal citation and quotation omitted); *Estate of Fisher v. Comm'r of Internal Revenue*, 905 F.2d 645, 648-49 (2d Cir. 1990) (the court determines whether "the danger of self-incrimination is real, not remote or speculative").

Even where a real danger of self-incrimination has been established, under appropriate circumstances, the court may infer a waiver "from a witness'[s] prior statements with respect to the subject matter of the case, without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it."  *Lopez v. City of New York*, No. 05-CV-3624, 2007 WL at 2228150, at *6 (E.D.N.Y. Jul. 31, 2007) (quoting *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981)).  The Supreme Court has mandated that such a waiver "is not to be lightly inferred," *Smith v. United States*, 337 U.S. 137, 150 (1949), and "courts must indulge every reasonable presumption against waiver. . . ." *Empsak v. United States*, 349 U.S. 190, 198 (1955).

**B.     Application**

Here, the Court must resolve two issues:  (1) whether, in refusing to answer certain deposition questions, Gouldsbury had "reasonable cause" to believe that providing such answers would lead to real danger of self-incrimination; and (2) whether, as a result of his responses to other deposition questions, Gouldsbury waived the privilege.

### 1. *The Fifth Amendment Privilege Is Personal*

Before turning to such issues, the Court must first address a substantial flaw in the invocation of Gouldsbury's privilege. In the instant motion, Textron moves to compel Gouldsbury's responses to seven questions posed during the deposition, which Gouldsbury declined to answer. In all seven instances, Gouldsbury himself did not invoke the privilege. Rather, it was his attorney who asserted it on his behalf and instructed him not to answer. *See* Tr. at 74:6-8; 79:12-14; 80:2-4; 135:19-21; 137:17-19; 147:9-12; 151:16-19. It is well established that the Fifth Amendment privilege against self-incrimination is a personal right. *See Calvo v. Donelli*, No. 06-CV-1794, 2007 WL 1288098, at *14 (E.D.N.Y. Apr. 30, 2007) (quoting *Couch v. United States*, 409 U.S. 322, 328 (1978) (the privilege "adheres basically to the person, not to information that may incriminate him")). Thus, if Gouldsbury believed that a truthful answer was incriminating, he was required to invoke the right himself; "counsel is not entitled to instruct [him] not answer on that ground." *Pal v. New York Univ.*, No. 06 Civ. 5892, 2007 WL 4358463, at *10 (S.D.N.Y. Dec. 10, 2007); *United States v. Schmidt*, 816 F.2d 1477, 1481 n.3 (10th Cir. 1987) (only holders of Fifth Amendment privilege, "not their counsel, are the proper parties to interpose a claim of privilege"); *United States v. Bowe*, 698 F.2d 560, 565 (2d Cir. 1983) ("the witness herself must assert the claim that answers to questions might reasonably implicate her in a crime or provide evidence leading to proof of criminal behavior"); *United States v. A& P Arora, Ltd.*, 46 F.3d 1152, 1995 WL 18276, at *3 n.4 (10th Cir. Jan. 18, 1995) (declining to consider Fifth Amendment claims because "a statement of counsel's 'advice' is obviously not the equivalent of a party's personal and affirmative invocation of the privilege").

Thus, the Court could grant Textron's motion to compel on the grounds that counsel's purported invocation of the privilege on Gouldsbury's behalf was invalid. This would, however, likely lead to a situation where Gouldsbury's deposition is continued, Textron poses the same questions, in response to which Gouldsbury himself invokes the privilege and refuses to answer -- and then Textron re-files what is, in effect, the same motion as that which is currently before the Court. In order to avoid such waste of the parties' and the Court's resources, I will now address the merits of Plaintiff's motion, notwithstanding the invalid and ineffective invocation of the privilege.

### 2. *Danger Of Self-Incrimination Is Readily Apparent*

The burden of establishing entitlement to invoke the Fifth Amendment privilege rests with the party asserting the privilege. *See Estate of Fisher*, 905 F.2d at 650 (2d Cir.1990) (reversing district court's denial of privilege) (citation omitted). The claimant of the privilege must demonstrate a "reasonable possibility that his own testimony will incriminate him, [but need] not establish it by a preponderance of the evidence." *Krape v. PDK Labs, Inc.*, No CV 02-3440, 2004 WL 831137, at *3 (E.D.N.Y. Apr. 19, 2004) (quoting *Fisher*, 905 F.2d at 650 (alteration in original) (additional citations omitted)). "[O]nce the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted." *Krape*, 2004 WL 831137, at *4 (quoting *Edgerton*, 743 F.2d at 921).

In conducting the necessary inquiry, "[a] judge must determine, 'from the implications of the question, in the setting in which it is asked, whether a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could

result." *Osrecovery, Inc.*, 262 F. Supp. 2d at 305 (internal quotations and citations omitted). The assessment of whether an injurious disclosure likely will result "must be governed as much by . . . [the judge's] personal perception of the peculiarities of the case as by the facts actually in evidence." *Hoffman*, 341 U.S. at 487; *United States v. Barile*, Civ. No. 1:06-MC-137, 2007 WL 3534261, at *2 (N.D.N.Y. Nov. 13, 2007) ("the judge's perception of the facts come into play as [s]he assess the credible basis of the party's invocation of the right").

This analysis necessitates an examination of the deposition testimony itself. *See United States v. Basciano*, 430 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2006) (quoting *Rogers*, 340 U.S. at 374 ("[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a real danger of further crimination") (internal quotations and additional citations omitted)). The questions at issue are as follows:

> **Q:** Do you know if anybody changed the hats[3] to reflect a different last four VIN numbers depending on who the floor plan checker was expected to be? (Tr. at 74:2-5)
>
> **Q:** Mr Gouldsbury, from the deposition of Stacie Hoffman we learned that she kept a list of the units that had been sold and unpaid. How often did she discuss that list with you? (*Id*. at 79:10-11)
>
> **Q:** Did Ms. Hoffman, to your knowledge, share that list with anyone other than you? (*Id*. at 79:23-25)
>
> **Q:** Did she [Ms. Hoffman] perform that function? That is, insuring that you knew where you stood with the various floor plan lenders? (*Id*. at 135:16-18)

---

[3] A "hat" is a "sticker of identification" which is placed on each of the vehicles in Eddy's Inventory. Tr. at 40:2-20.

**Q:** Did Eddy's ever produce financial statements? P and L's? Balance sheets? (*Id*. at 137:17-19)

**Q:** Was it at this third meeting with the accountant that Shaun learned about the company being out of trust? (*Id*. at 147:6-8)

**Q:** And it was at those meetings that you were full, open and frank with the accountant? (*Id*. at 151:13-15)

All of these questions pertain, *inter alia*, to Textron's claim that Gouldsbury and his employees engaged in a conspiracy to defraud Textron, the lender. The claim is that Eddy's allegedly sold Inventory (in which Textron had a security interest) but did not repay Textron as it was obligated to do under the parties' agreements. In particular, Textron alleges that Eddy's personnel employed various tactics, such as switching the VINs on the Inventory prior to a floor-plan inspection by a lender's representative, to make it appear that Inventory which Eddy's had sold was in stock. Based upon a careful review of the complete transcript of Gouldsbury's deposition, and a familiarity with the facts of this case, I find that criminal prosecution is a "real danger" with regard to Gouldsbury and is not remote or speculative. *See Sharma,* 2005 WL 1086459, at *1-2; *see also Krape*, 2004 WL 831137, at *3 ("the court must be satisfied that, given all the circumstances of the case, in connection with each area the questioning party wishes to explore, the claimant of the privilege is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination") (internal quotations and citations omitted). This principle is reinforced by the Supreme Court's mandate that "[t]he privilege against self-incrimination 'must be accorded liberal construction.'" *Sharma*, 2005 WL 1086459, at *2 (quoting *Hoffman*, 341 U.S. at 486); *see also Fisher*, 905 F.2d at 648 ("The guarantee must be broadly construed to serve the right it was designed to protect. . . .").

All seven questions at issue here seek information related to the alleged fraud and conspiracy which are closely intertwined with Plaintiff's causes of action in this case.[4]  The Court concludes that during the deposition, Gouldsbury had a reasonable belief that his responses to these questions "could create a link in the chain of evidence needed to prosecute him" for certain offenses.  *See Sharma,* 2005 WL 1086459, at *2.  Likewise, it is readily apparently that Gouldsbury risks inculpating himself by answering such questions.  These inquiries, therefore, fall squarely within the parameters of Fifth Amendment protection.  *See Osrecovery, Inc.*, 262 F. Supp. 2d at 307 (witness need not answer deposition questions that sought information related to the alleged fraud).

### 3.  *Waiver*

Courts within the Second Circuit apply a two-pronged test to determine if a witness's prior statements have resulted in a Fifth Amendment waiver:  (1) whether "the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth;" and (2) whether "the witness had reason to know that his prior statements would be interpreted as a waiver. . . ."  *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981) (cited in *Osrecovery, Inc.*, 262 F. Supp. 2d at 308).

In support of its motion, Textron asserts that, to the extent the privilege applies, Gouldsbury waived such privilege because he "made certain voluntary statements regarding <u>how</u> he effected the fraud on Plaintiff."  DE 68 at 3 (emphasis in original).  Textron further contends that by making such statements, Gouldsbury waived the privilege "with respect to <u>all</u> questions

---

[4]  It is also apparent from prior conferences in this case that Plaintiff intends to seek leave to amend its complaint to include a claim for fraud.

on the <u>same subject</u>. *Id*. at 2 (emphasis in original). Specifically, Textron points to the following testimony by Gouldsbury: "Everyone seems to have forgotten about that. That's where a lot of the puzzle is. Rentals were always there." DE 68 (quoting Tr. at 26:15-17). In order to determine whether this statement by Gouldsbury operates as a waiver, as Plaintiff argues, it is necessary to examine the response in context. At this point in the deposition, Plaintiff's counsel was questioning Gouldsbury about the different types of vehicles in Eddy's Inventory, the arrangement of such vehicles on the floor, and Eddy's financing arrangements with its lenders.

> **Q:** The one thing I did not hear anybody say in all of the depositions is where the rental units were stored on your lot. Where were they stored?
>
> **A:** I mentioned that to Steve during Vito's [deposition]. They had their whole area. They were right in the middle of everything. You had asked a question about the cleaners. Again, no one mentioned the rentals. That's what they did. You know, got a fleet of actively 20 rental units. What do you need cleaners for? You need your house done? I'll send them over. You know, those units needed to be cleaned. There were never any service ones to be cleaned, new ones to be cleaned. *Everyone seems to have forgotten about that. That's where a lot of the puzzle is. Rentals were always there*.

Tr. at 25:23-26:17 (emphasis added to indicate the portion addressed by Plaintiff). The sentences cited by Plaintiff in support of its position that "Mr. Gouldsbury has admitted to perpetrating a fraud upon Plaintiff" [DE 68] are vague and conclusory. Moreover, Plaintiff has not pointed to any evidence to specifically connect Gouldsbury's statements to its claims in this case. Essentially, Plaintiff has not connected the dots. In light of the information presented, the Court

cannot conclude that these statements constitute an admission of fraud, and thus there is no basis for a finding of waiver by Gouldsbury.[5]

### a.  Distorted Truth

Under the first prong of the waiver analysis, the key question is "whether the witness' prior testimony has created a significant danger of distortion." *Osrecovery, Inc.*, 262 F. Supp. 2d at 308 (quoting *Klein*, 667 F.2d at 287). "[T]he privilege against self-incrimination 'should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition  . . . .'" *Osrecovery, Inc.*, 262 F. Supp. 2d at 308 (quoting *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942)). The Court now turns to a question-by-question analysis to determine if Gouldsbury's refusals to answer have created such a situation.

### i.  The First Question

In the first question raised here, Plaintiff's counsel inquired whether Gouldsbury knew if any of his employees changed the "hats" (identification stickers on the cars) to reflect a different VIN than that which actually belonged to the car. Tr. at 74:2-5. Earlier in the deposition, Plaintiff's counsel asked several questions regarding the hats, including Eddy's practices related to placement of the hats on the vehicles. *See id*. at 42:4-47:18. Plaintiff's counsel also inquired as to Eddy's practices in setting up its Inventory (*id*. at 49:14-53:16), and preparing for inspections by the lenders' floor plan inspectors (*id*. at 57:14-58:10, 61:8-73:25). The Court has reviewed these lines of questioning leading up to the inquiry at issue here and notes that in

---

[5]     Plaintiff's assertion that Gouldsbury waived his privilege by offering "to confess judgment as to <u>all</u> the charges alleged" (DE 68 at 3) (emphasis in original), is likewise unavailing. As Defendant correctly points out, such offer was for settlement purposes only and cannot be used against him in this context.

several instances, defense counsel instructed Gouldsbury not to answer on Fifth Amendment grounds. In the instant motion, however, Plaintiff does not challenge those assertions of privilege. By invoking the privilege in response to several of the lead-up questions, Gouldsbury did not make any disclosures which, in combination with his refusal to answer whether his employees changed the vehicles' hats, would "create a significant likelihood that the finder of fact will be left with a distorted view of the truth." *Lopez*, 2007 WL 2228150, at &*9 (quoting *Klein*, 667 F.2d at 287). In light of the fact that Plaintiff has not challenged the multiple assertions of privilege in the lead-up questions, the Court has no alternative but to find that there was no waiver with respect to whether Gouldsbury knew if his employees changed the hats on the vehicles.

### ii.      *The Second and Third Questions*

The second and third questions at issue here to pertain to a list -- referred to as the "SOT list"[6] -- kept by Eddy's employee Stacie Hoffman which allegedly listed the vehicles which Eddy's had sold but for which it had not paid the Lender. An examination of the questions in their full context is helpful here.

> **Q:**      Mr. Gouldsbury, from the deposition of Stacie Hoffman we learned that she kept a list of the units that had been sold and unpaid. How often did she discuss that list with you?

> **Mr. Blatt:**[7] I instruct the deponent not to answer based on his Fifth Amendment rights.

---

[6]      The Court understands "SOT" to stand for "sold out of trust." Thus, the list contains the vehicles which Eddy's sold "out of trust," *i.e.*, which vehicles Eddy's purchased using money provided by the lenders, but for which it did not repay the lenders as it was obligated to do pursuant to the parties' agreements.

[7]      Mr. Blatt was Gouldsbury's counsel at the time of the deposition.

| **Q:** | Are you aware that Miss Hoffman kept such list? |
|---|---|

**A:**     Yes

**Mr. Blatt**: Mr. Gouldsbury, would you please slow down and listen to the question and give me an opportunity to object or instruct, give you proper instruction.

**Q:**     Did Ms. Hoffman, to your knowledge, share that list with anyone other than you?

**Mr. Blatt**: I'm going to instruct the deponent not to answer based upon his Fifth Amendment rights.

Tr. at 79:7-80:4. By answering "yes" to counsel's inquiry as to whether he was aware that Hoffman maintained the SOT list, Gouldsbury waived his privilege with respect to the two questions presented here. Whether Eddy's was "out of trust"with Textron is a key issue in the case. In light of Gouldsbury's testimony that he was aware that Hoffman maintained the SOT list, denying Plaintiff the opportunity to fully examine Gouldsbury on the list would result in an incomplete factual record on which the finder of fact will be "prone to rely," and which will likely result in undue prejudice to Plaintiff's case. *See Lopez*, 2007 WL 2228150, at * 9 (citing cases). Accordingly, the Court concludes that Gouldsbury's invocation of the privilege here "would open the way to distortion of the facts by permitting the witness to choose a favorable stopping place in his testimony." *See Sec. & Exch. Comm'n v. Cayman Islands Resinsurance Corp., Ltd*., 551 F. Supp. 1056, 1058 (S.D.N.Y. 1982) (citing *Rogers*, 340 U.S. at 371).

### iii.     The Fourth Question

The fourth question pertains to whether Hoffman informed Gouldsbury of "where [he] stood with the various floor plan lenders." Prior to this question, Gouldsbury testified that he had

hired Hoffman in March 2007 to replace people who "were incapable of doing their job properly." Tr. at 132:17-21. Gouldsbury then testified as to why he hired Hoffman:

**Q:** Was a job description given to Miss Hoffman?

**A:** I don't believe so.

**Q:** Was a job description in your mind as to what you expected her to do when you first hired her in March of 200[7] [*sic*]?

**A:** Basically to clean up - in her previous job she was a manager over in Auto Auction. She had good capabilities and I wanted that department to be straightened out, you know, as far as finance, bring someone in that understood the auto- some floor planning and stuff like that.

**Q:** Did she have experience with floor planning before?

**A:** I didn't believe so.

**Q:** But you brought her in to straighten out the floorplanning?

**A:** Yes.

**Q:** And how did you expect her to do that?

**A:** Well, you take an intelligent person with management skills. You can usually focus them on what you need to do.

**Q:** Was it your instruction to her to assist in you in making sure that you understand the situation with what was owed the various floor plan lenders?

**Mr. Blatt**: I'm going to instruct the deponent not to answer based upon his Fifth Amendment rights.

**Q:** Did she perform that function? That is, insuring that you knew where you stood with the various floor plan lenders?

**Mr. Blatt**: I'm going to instruct the deponent not to answer based upon his Fifth Amendment rights.

Tr. at 134:11-135:21.  In light of my previous finding that Gouldsbury has waived the privilege

with respect to what he knew about Ms. Hoffman's preparation of the SOT list, in combination

with Gouldsbury's specific testimony about Hoffman's job duties -- that she was hired to

"straighten out" Eddy's financing and the floor plan -- allowing Gouldsbury to avoid testifying as

to whether Hoffman informed him about "where [he] stood with various lenders" -- would create

a signfnicant risk of "truth distortion" here.  Moreover, because Gouldsbury made voluntary

statements regarding the SOT list and Hoffman's job duties, he has waived any subsequent claim

of privilege with respect to such subjects.  *See In re Sheldon*, 93 F. Supp. 2d at 505 ("A witness

who fails to invoke the Fifth Amendment against questions as to which he could have claimed it

is deemed to have waived his privilege with respect to all questions on the same subject matter.")

(citing, *inter alia*, *Rogers*, 340 U.S. at 373).  Accordingly, Gouldsbury has waived the privilege

in connection with the fourth question challenged by Plaintiff.

### iv.      *The Fifth Question*

The fifth question at issue here is whether "Eddy's ever produce[d] financial statements?

P and L's?  Balance sheets?"  Tr. at 137:17-19.  Prior to that question, Gouldsbury testified

briefly about which accounts certain sales proceeds were deposited into and that Eddy's may

have used QuickBooks accounting software.  *Id*. at 135:25-137:16.  Gouldsbury did not provide

any testimony which, in combination with his refusal to answer this question, could be seen as

creating a risk of truth distortion.  In any event, the question itself is ambiguous -- without more,

the reader has no idea if this language refers to whether Eddy's ever compiled such records

internally, or whether counsel is referring to document production in this case, or to "production"

to another entity, the IRS, etc.  Additionally, Plaintiff has not provided any indication of the

question's import to Plaintiff's claims. Because of the ambiguity of the question and the lack of

support for Plaintiff's position here, the Court has no basis upon which to find that Gouldsbury

waived the privilege with respect to this question.

### v.     *The Sixth Question*

In the sixth question raised here, Plaintiff asked whether "it was at this third meeting with

the accountant that Shaun learned about the company being out of trust." Tr. at 147:6-8. In

response, defense counsel instructed Gouldsbury not to answer. Thereafter, the following took

place:

**Q:**     When was the first time that you told Shaun that Eddy's was out of trust
with its lenders?

**A:**     I don't remember.

**Q:**     So you do remember that you told him but you don't recall the date?

**Mr. Blatt**: It's a yes or no.

**A:**     Well, no. My answer- I don't share everything with my son because of the
nature of my business.

**Q:**     All right. That's unfortunately not responsive to my question, so let me ask
my question again, sir.

**A:**     Okay.

**Q:**     I asked you when was the first time that you told Shaun that Eddy's was out
of trust with its lenders. Your answer was I don't recall.

**A:**     Correct

**Q:**     All right. So my follow-up question was that you do recall telling him, you
just don't recall when you told him?

**A:**     Correct.

**Q:**   Do you have a recollection that you told him before the lenders showed up to pick up their inventory?

**A:**   I'm not sure of the exact time line.

**Q:**   Okay. So it may have been before.  It may not have been before.

**Mr. Blatt**: Mr. Gouldsbury, It's a yes or no.  If you know.

**A:**   I don't know.

Tr. at 153:2-154:11.  Thus, despite Defense counsel's directive to Gouldsbury not to answer, Gouldsbury subsequently testified as to the same subject mater.  The record is clear that Gouldsbury indeed told his son Shaun that Eddy's was out of trust with its lenders, but that he did not recall the exact date on which such conversation occurred.  In light of the fact that Plaintiff subsequently obtained the desired testimony, the motion to compel with respect to this inquiry is deemed moot.

### *vi.     The Seventh Question*

The last question at issue here -- whether Gouldsbury was "full, open and frank with the accountant" (Tr. at 151:13-15) -- is ambiguous and Plaintiff has not provided any information as to the import of the information requested.  Accordingly, Court has no basis upon which to find that Gouldsbury's refual to answer creates a distortion of the truth.                                     .

Having found that Gouldsbury's refusal to answer the second, third and fourth questions creates the risk of a distortion of the truth, the Court now turns to the second prong of the waiver analysis with respect to these questions.

### b.      Reason To Know

Upon finding a risk of distortion of the truth, the Court must then determine whether the witness "had reason to know that his statements would be interpreted as a waiver." *Lopez*, 2007 WL 2228150, at * 7.  This test is met when the witness' statements were (1) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, and (2) "incriminating," meaning that they did not merely deal with matters "collateral" to the events surrounding the commission of the crime, but directly inculpated the witness on the charges at issue.  *Osrecovery, Inc.*, 262 F. Supp. 2d at 309 (quoting *Klein v. Harris*, 667 F.2d at 288).  "In determining whether a matter is collateral, the court must consider whether a party's inability to examine the witness precludes [it] from testing the truth of the witness's direct testimony, or whether the answers solicited might have established untruthfulness with respect to specific events of the crime charged."  *Cartier*, 2008 U.S. Dist. LEXIS 39143, at *10 (citation omitted).

Given Gouldsbury's testimony was provided during a deposition and under oath, such testimony was "voluntary."  *See Lopez*, 2007 WL 2228150, at * 9 (witness' statements at his deposition were "testimonial because they were voluntarily made under oath in the context of the same judicial proceeding") (internal quotations omitted); *see also Osrecovery*, 262 F. Supp. 2d at 309; *cf. Cayman Islands Reinsurance Corp., Ltd.*, 551 F. Supp. at 1059 (finding that the statements were not "testimonial" because they were not made under oath).

Moreover, the statements by Gouldsbury discussed above in connection with questions 2, 3, and 4 were "incriminating" because they "(1) ... [were] not on a collateral matter, and (2) inculpated the witness." *Lopez*, 2007 WL 2228150, at * 9 (quoting *Osrecovery*, 262 F.Supp.2d

at 309). "The pivotal attribute of 'incriminating' testimony," as that term is used in *Klein*, "is the witness's ability to have invoked the privilege, not whether the testimony given actually harmed the witness." *Osrecovery*, 26 F. Supp. 2d at 310. Under the circumstances presented here, Gouldsbury had the right to invoke the privilege and refuse to answer the questions about the SOT list and Hoffman's involvement (as demonstrated by his refusal to answer certain questions on the topic, other than the challenged questions).[8]

In applying the foregoing analysis, the Court finds that Gouldsbury "plainly [had] reason to know ... that [his] statements may be interpreted as a waiver against self-incrimination, [and thus] is not treated unfairly . . ." if the court infers such a waiver. *Lopez*, 2007 WL 2228150, at *10 (quoting *Klein*, 667 F.2d at 288). In light of my findings that Gouldsbury's statements have created a "significant likelihood that the finder of fact will be left with an incomplete factual record," and were "testimonial" and "incriminating," I conclude that Gouldsbury has waived his Fifth Amendment privilege against self-incrimination with respect to questions two, three and four. *Id*.

---

[8] By way of comparison, Textron asserts that the second and third questions "concerned the actions, statements or knowledge of individuals other than Mr. Gouldsbury" and because the privilege is "personal," Gouldsbury's assertion of the privilege is invalid. *See* DE 68 at 2-3. It is true that the Fifth Amendment guarantee is "personal" -- *i.e.*, no person should be compelled to be a witness *against himself* in a criminal case and the privilege "adheres basically to the person, not to information that may incriminate him." *Calvo*, 2007 WL 1288098, at * 14 (citing *Couch*, 409 U.S. at 328). In other words, "the privilege protects a person only against being incriminated by his own compelled testimonial communications," *Fisher*, 425 U.S. at 409, but does not protect against "incriminating statements elicited from another." *Couch*, 409 U.S. at 328 (quoted in *Calvo*, 2007 WL 1288098, at *14). The questions at issue here asked Gouldsbury what *he* knew about certain things his employee did. In opposing this motion, Defendant does not attempt to assert the privilege on Hoffman's behalf. To the contrary, regardless of whether Defendant waived the privilege with respect to these questions, Textron is free to obtain this information from other individuals.

Accordingly, Gouldsbury is directed to appear for another deposition. Should Gouldsbury again assert the Fifth Amendment privilege and refuse to testify as to these questions, despite this Court's finding that he has waived such privilege, the Court will proceed to take further action as appropriate. *Lopez*, 2007 WL 2228150, at 10 (citations omitted).

### C. Alternative Relief

Although Gouldsbury is entitled to assert his Fifth Amendment right against self-incrimination, as a result of doing so, he may be subject to an adverse inference later in this litigation. *See Monteleone v. Leverage Group*, 08-3129, 2008 WL 4541124, at *7 (E.D.N.Y. Oct. 7, 2008) ("A Court may draw an adverse inference against a party in a civil action when a party invokes his Fifth Amendment right and refuses to testify in response to probative evidence offered against him.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Brink's, Inc. v. New York*, 717 F.2d 700, 709 (1983)); *see also United States v. 15 Black Ledge Dr.*, 897 F.2d 97, 99, 103 (2d Cir. 1990) (affirming drawing of adverse inference based upon defendant's assertion of Fifth Amendment privilege during deposition). At the appropriate time, Textron, as the party denied discovery based upon the assertion of the privilege, can ask the court to draw a negative inference from Gouldsbury's invocation of the right. *See Baxter*, 425 U.S. 318-20; *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997); *United States v. 4003-4005 Fifth Ave.*, 55 F.3d 78, 82 (2d Cir. 1995) (explaining that invocation of the Fifth Amendment privilege necessarily results in a disadvantage to opposing parties by "keep[ing] them from obtaining information they could otherwise get").

**IV.** **CONCLUSION**

For the reasons set forth above, Textron's motion to compel is granted with respect to questions 2, 3 and 4, and is denied with respect to questions 1, 5, 6 and 7.

**SO ORDERED.**

Dated: Central Islip, New York
        March 31, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge